UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

CAMBRIA COMPANY LLC,

                          Plaintiff,

v.

DISNEY WORLDWIDE SERVICES, INC.,

                          Defendant.

Civil No. 22-459 (JRT/JFD)

**MEMORADUM OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND *DAUBERT* MOTIONS**

---

Bryan R. Freeman and Jeremy Krahn, **MASLON LLP**, 225 South Sixth Street, Suite 2900, Minneapolis, MN 55402, for Plaintiff.

Farah N. Famouri and Sybil L. Dunlop, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for Defendant.

Plaintiff Cambria Company LLC ("Cambria") agreed to supply Defendant Disney WorldWide Services, Inc. ("Disney") with quartz slabs for Disney's renovation projects. After the parties entered into a global agreement, they executed individual purchase agreements. Most of those purchase agreements did not contemplate payment of transportation costs. Because the purchase agreements serve as the final agreement between the parties, those terms govern. Under those terms, Disney is not liable for freight costs but is liable for A-frame costs included in the purchase agreements.[1] The

---

[1] An A-frame is a necessary structure to transport quartz slabs on trucks. (Decl. of Kristin Skelley ¶ 4, Aug. 5, 2024, Docket No. 139.)

conflicting expert opinions will be excluded but only to the extent they do not align with the Court's determination on liability.

## BACKGROUND

### I. FACTS

Cambria and Disney entered into a blanket purchase agreement entitled the Quartz Master Agreement ("Agreement") on April 14, 2016, for Cambria to supply Disney with quartz countertops. (Decl. of Bryan Freeman ("Freeman Decl.") ¶ 2, Ex. A ("Agreement") at 1, Aug. 5, 2024, Docket No. 135.) After entering into the Agreement, Disney issued seven purchase orders for quartz slabs and two open purchase orders for A-frames. (Decl. of Anna M. Tobin ("Tobin Decl.") ¶ 3, Exs. H–P ("Purchase Orders H–P"), Aug. 5, 2024, Docket No. 126.) Cambria alleges that it has fully performed on the purchase orders but is still owed approximately $500,000 in transportation costs and unpaid product invoices. (Compl. ¶¶ 20–21, Feb. 18, 2022, Docket No. 1.) Disney claims that it has paid all invoices in full. (Decl. of Sybil L. Dunlop ("2nd Dunlop Decl.") ¶ 2, Ex. 3 ("Porter Report") at 9,[2] Aug. 5, 2024, Docket No. 115.)

In the Agreement, the parties agreed to prices, including freight, as described in Attachment A of the Agreement. (Agreement ¶¶ 5, 8.) The parties further agreed that those prices governed unless the parties agreed to different pricing in writing. (*Id.* ¶ 5.)

---

[2] All citations are to ECF pagination.

In addition to the prices, Attachment A described Cambria's rebate program. The rebate program provided that if Disney exceeded an annual volume of 100,000 square feet in total spend, Cambria would rebate 5%. (*Id* at 8.)  Total spend was to be calculated using payments received by Disney and all its worldwide affiliates. (*Id.*) Cambria was required to provide Disney with an annual receivables report detailing the total spend. (*Id.*)

The Agreement also included an integration clause. The integration clause stated that the Agreement would supersede any "previous and contemporaneous communications, agreements, and representations, whether oral or written." (*Id.* ¶ 20.) But the integration clause also expressly incorporated the attached "Purchase Order Terms and Conditions" and future purchase orders. (*Id.*)

After entering into the Agreement, the parties began negotiating a potential bulk truckload discount. In August 2016, Disney and Cambria representatives met in person. (Freeman Decl. ¶ 15, 21, Ex. N ("Sprague Dep.") at 149:10–17, Ex. T at 3.) After the meeting, Cambria employee Courtney Bliss internally emailed notes about the meeting describing Disney's interest in the truckload discount. (Freeman Decl. ¶ 21, Ex. T at 4–6.) Specifically, Bliss wrote, "This 2 dollar a sq ft saving on material plus added in cost of freight and A Frame rental was appealing." (*Id.* at 4.)

Internal Cambria emails discuss anticipated trucking prices of between $4,500–$5,000, A-frame costs and logistics for returning or reusing A-frames, and Disney's

responsibility for the freight costs. (Tobin Decl. ¶ 4, Ex. T at 3–4; Freeman Decl. ¶ 44, Ex. QQ at 161; Opp. Decl. of Brian Freeman ("Opp. Freeman Decl.") ¶¶ 3–4, Exs. UU, VV, Aug. 26, 2024, Docket No. 147.)

Communications between Disney and Cambria corroborated the negotiations found in Cambria's internal emails. Cambria sent a purchase order for Disney's approval that indicated freight costs would be added to the invoice. (Opp. Freeman Decl. ¶ 5, Ex. WW.) Disney representatives and Cambria also exchanged emails confirming shipping costs per truck. (Freeman Decl. ¶¶ 22–23, Ex. U at 107–110, Ex. V. at 114.) Cambria further offered a flat fee for A-frames so that Disney could easily include those costs on a purchase order. (*Id.* ¶ 23, Ex. V. at 114.)

From September 2016 to July 2017, Disney ordered quartz from Cambria on seven separate purchase orders. (Purchase Orders H–L, N–O.) Only two purchase orders included a specific cost for freight charges. (Purchase Order H at 3; Purchase Order O at 4–5.) Disney also issued two open purchase orders for A-frames and requested that Cambria bill those costs separately. (Purchase Orders M, P; Freeman Decl. ¶¶ 27–29, Exs. Z, AA, BB; Sprague Dep. at 167:14–17.)

Over the course of the business relationship, Cambria supplied Disney with more than 5,000 quartz slabs. (Skelley Decl. ¶ 13, Ex. 6 at 8.) Disney paid Cambria for many invoices, but Cambria claims it is owed around $250,000 for unpaid freight and A-frame costs. (Pl.'s Mot. Supp. Mot. Summ. J. at 10, Aug. 5, 2024, Docket No. 134.) Cambria

issued Disney one rebate in September 2017 in the amount of $202,196.18. (Skelley Decl. ¶ 12, Ex. 3.) Cambria did not provide Disney with any other annual receivable reports or any other rebates. (*Id.*; Pl.'s Reply Mem. Supp. Mot. Summ. J. at 19, Sept. 16, 2024, Docket No. 160.)

## II.   PROCEDURAL HISTORY

Cambria filed this action on February 18, 2022, bringing four contract-related claims: breach of contract, unjust enrichment, accounts stated, and promissory estoppel. (Compl. ¶¶ 47–71.) Cambria seeks more than $500,000 for unpaid product charges, freight costs, and A-frame costs. (*Id.*) Disney moved to dismiss for lack of personal jurisdiction, and the Court denied the motion after finding sufficient contacts to Minnesota. (Mot. Dismiss, June 3, 2022, Docket No. 17; Mem. Op. & Order Denying Mot. Dismiss, Jan. 17, 2023, Docket No. 39.) Disney then answered and asserted two counterclaims: breach of contract and demand for an accounting. (Answer ¶¶ 24–30, Feb. 9, 2023, Docket No. 52.)

The Magistrate Judge issued a scheduling order that staggered disclosure of experts. (Scheduling Order at 2, Mar. 29, 2023, Docket No. 59.) Cambria elected not to engage an initial expert. (Decl. of Bryan Freeman, Ex. B, Feb. 28, 2024, Docket No. 84.) Notwithstanding the lack of an initial expert, Disney retained a rebuttal expert, Meghan D. Porter. (Decl. of Sybil L. Dunlop ("1st Dunlop Decl.") ¶ 1, Mar. 6, 2024, Docket No. 91.) Cambria moved to exclude or strike Porter's report because under the plain terms of the scheduling order, without an initial expert, there could be no rebuttal. (Mot. Exclude

Expert Test. Meghan D. Porter, Feb. 28, 2024, Docket No. 81, Mem. Supp. at 5, Feb. 28, 2024, Docket No. 83.) The Magistrate Judge declined to exclude or strike the expert report but allowed Cambria to file a surrebuttal expert. (Min. Entry, Mar. 14, 2024, Docket No. 94.) Cambria disclosed an internal employee and fact witness, Shannon Shindelar, as its surrebuttal expert witness. (2nd Dunlop Decl. ¶ 2, Ex. 5 ("Shindelar Report").) Both parties then moved to exclude the other's expert under Fed. R. Evid. 702. (Cambria Mot. to Exclude, Disney Mot. to Exclude, Aug. 5, 2024, Docket Nos. 103, 112.)

Both parties also moved for partial summary judgment. (Def.'s Mot. Summ. J, Pl.'s Mot. Summ. J., Aug. 5, 2023, Docket Nos. 122, 129.) The parties agree that fact disputes remain as to any failure to pay for product received and thus exclude that dispute from their motions for summary judgment. (*See, e.g.*, Def.'s Mem. Supp. Mot. Summ. J. at 2 n.1, Aug. 5, 2024, Docket No. 124.) Instead, the parties move for summary judgment on freight costs and A-frame liability. (Pl.'s Mot. Summ. J. at 1.) Cambria also moved for summary judgment on Disney's counterclaims. (*Id.*)

## III. EXPERT SUMMARY REPORTS

### A. Meghan D. Porter

Disney retained Meghan D. Porter as its accounting expert. (Porter Report at 4.) Porter obtained a Bachelor of Arts in Economics from the University of Colorado at Boulder and a Master of Business Administration from DePaul University. (*Id.*) She has worked as an associate at a regional bank, a manager at Davis & Hosfield Consulting LLC, and now as a director at Stout Risius Ross, LLC. (*Id.*) Since 2013, she has been providing

financial consulting to attorneys and corporations, including dispute resolution services and damages studies. (*Id.*)

Porter relied on documents produced by the parties; publicly available information; depositions from Kristin Skelley (Cambria), Mackenzie Weldon (Cambria), and Katherine Sprague (Disney); and conversations with Katherine Sprague (Disney) and Matthew Hierholzer (Disney). (*Id.* at 5.) Based on that review, Porter gave two opinions: (1) "Disney submitted [purchase orders] to Cambria pursuant to the Agreement and paid Cambria's invoices that were appropriately submitted through Disney's payment portal," and (2) "Cambria's invoicing is inconsistent and its payment records include errors, resulting in an unreliable accounting of any alleged outstanding balance owed by Disney." (*Id.* at 7.) For both opinions, Porter reviewed financial documentation to determine what had been paid and what was still outstanding. (*Id.* at 11–12.) In support of her second opinion, Porter attached a freight reconciliation chart that detailed the invoice amounts and the balances due. (*Id.* at 25.)

**B. Shannon Shindelar**

Cambria offered internal Cambria employee Shannon Shindelar as its expert surrebuttal witness. (Shindelar Report at 3.) Shindelar earned a Bachelor of Accountancy from the University of Northern Iowa and was previously licensed as a certified public accountant. (*Id.*) Since graduating, Shindelar has worked in accounting for PricewaterhouseCoopers, Harley-Davidson Financial Services, Target Corporation, and now Cambria. (*Id.* at 3–4.)

Shindelar relied on Porter's report; deposition transcripts of Paul Amos (Cambria), Mojgan Kashi (Disney), Meghan Porter (Disney's Expert), and herself; and other documents. (*Id.* at 3.) Shindelar disagreed with both of Porter's opinions for "many reasons." (*Id.* at 5–12.) Broadly, Shindelar claims that Porter's opinions are based on factual inaccuracies and a misunderstanding of the data. (*Id.* at 12.) Shindelar counters Porter's first opinion by pointing out perceived factual discrepancies and alternative opinions on the interpretation of the Agreement. (*Id.* at 5.) In response to Porter's second opinion, Shindelar references her own accounting reconciliation in which she performed an accounting analysis on purchase orders and email orders, bills of lading, invoices, and Disney's payment record provided to Cambria. (*Id.* at 8.) All of this documentation allowed Shindelar to determine the total amount of quartz slabs ordered by Disney, the total shipped by Cambria, the amount owed for the product, and the amount Disney had already paid. (*Id.*) Shindelar concludes by opining that Disney should be required to pay the outstanding slab invoices, unpaid freight, and A-frame costs, as well as interest. (*Id.* at 13.)

## DISCUSSION

### I. SUMMARY JUDGMENT

Cambria and Disney both move for summary judgment on liability for freight and A-frame costs. Disney moves for summary judgment on Cambria's unjust enrichment claim. Cambria also moves for summary judgment on Disney's counterclaims of breach

of contract and demanding an accounting. The parties agree that there remain factual disputes as to unpaid slab invoices.

## A. Standard of review

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## B. Freight and A-Frame Liability

Both parties agree that under the original agreement, Disney benefitted from a no bulk truckload discount, and the cost of shipping Cambria's product to the Cambria Florida Distribution Facility was included in the price Disney paid Cambria.

But the parties dispute what happened after signing that original agreement, as they engaged in negotiations to give Disney a truckload discount in exchange for shifting freight costs fully to Disney. But the Agreement's integration clause renders those negotiations irrelevant. As each new purchase order was issued, the effect of the integration clause was to include an ever-expanding pool of purchase orders as part of the final agreement, repeatedly superseding any previous and contemporaneous agreements.

The purchase orders are the parties' final agreements. Though some purchase orders break out freight costs separately and others do not, the parties agreed in those purchase orders that Disney would simply pay a certain price for each shipment. Those terms are final. They are unaltered by any other agreement, and they unburden Disney from any prior agreement that would have traded shifting freight costs for truckload pricing discounts. Accordingly, the Court will find as a matter of law that Disney is not responsible for any additional freight costs not included in the final price on the purchase orders.

But Disney is liable for some A-frame costs for the same reason it is not liable for freight costs: the terms were included in final purchase orders. Disney executed two open purchase orders for A-frames and specifically asked Cambria to bill those A-frame costs separately from slab invoices. Like all other purchase orders under the Agreement, the

purchase orders for the A-frames are fully integrated into the master agreement, so as a matter of law, Disney is responsible for some A-frame costs.

Still, because the parties dispute how many A-frames fell within the scope of liability under the terms of the A-frame purchase orders, there remains a genuine factual dispute as to the dollar amount Disney owes for A-frames.

### C. Unjust Enrichment

Cambria brought a claim for unjust enrichment in the alternative to its breach of contract claim. Because the Agreement provides an adequate remedy at law, Cambria's unjust enrichment claim must be dismissed.

To state a claim for unjust enrichment under Minnesota law, a plaintiff must allege facts showing "(1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it." *Christensen L. Off., PLLC v. Ngouambe*, No. A17-1917, 2018 WL 2293423, at *6 (Minn. Ct. App. May 21, 2018).

But a claim for unjust enrichment is unavailable when there exists an adequate legal remedy. *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014) (quoting *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996)). And unjust enrichment cannot be used to rewrite a poor bargain. *Cady v. Bush*, 166 N.W.2d 358, 362 (Minn. 1969).

Here, the parties' relationship was governed by the Agreement and thus Cambria has a legal remedy through a claim for breach of contract.

Cambria agreed to the Master Agreement, which included an integration provision that would fully integrate the terms in any subsequent purchase orders. Disney then executed purchase orders at a discounted price that did not include freight costs. Those purchase orders are the final agreements, and Cambria cannot now claim that Disney was unjustly enriched by obtaining what it was entitled to under those agreements. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 554 (8th Cir. 2008) (discussing unjust enrichment under Minnesota law).

The Court will grant summary judgment for Disney on Cambria's unjust enrichment claim.

### D. Disney's Counterclaims

Disney brings two counterclaims: breach of contract and demand for accounting. Only part of the breach of contract counterclaim will survive.

Disney's breach of contract counterclaim is vague but seems to encompass quality issues, products not received, A-frame credits, rebates, and deposit refunds. Disney addressed the rebate issue in its response memorandum, and the parties acknowledged at oral argument that a dispute remains over products not received. But to the extent Disney even alleged breach of contract for quality issues, A-frames credits, or deposit refunds, Disney has since abandoned those claims, so the Court will grant Cambria summary judgment on those issues. *Butler v. City of Richfield*, No. 14-281, 2014 WL

4071956, at *5 (D. Minn. Aug. 18, 2014) (citing *Solum v. Bd. Of Cnty. Com'rs for Cnty. of Houston*, 880 F. Supp. 2d 1008, 1016 (D. Minn. 2012).

For rebates, Disney alleges that Cambria did not fully pay the rebates Disney was owed under the Agreement. Indeed, Disney alleges Cambria's failure to track Disney's global spend or provide annual accounts receivable reports means that Cambria could not have identified if Disney was owed additional rebates. Cambria admits that it did not provide the annual accounts receivable reports on total spend but asserts it did so because it was obvious that Disney had not reached the threshold spend for additional rebates and therefore Disney suffered no harm. However, Disney presented evidence that Cambria did not develop methods for tracking Disney's global spend nor did Cambria track products purchased from Disney affiliates. So there remains a dispute as to whether Disney actually earned additional rebates that Cambria did not pay.

Th parties agree that Cambria only paid out a rebate once: a $202,196.18 payment in September 2017. On this payment, Disney argues that it was actually due $262,658.99. But when the rebate issued, Disney confirmed the method of calculation—total paid not total ordered—and did not dispute the amount. Disney has failed to demonstrate a disputed factual issue with respect to the September 2017 rebate amount.

Separate from the breach of contract claim, Disney also asserts a counterclaim of demand for an accounting. However, that counterclaim is encompassed by its breach of contract claim, and Disney is able to obtain that accounting through discovery. Thus, the

Court will grant Cambria's motion for summary judgment on this count. *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012) (affirming dismissal of a demand for accounting when the information was available through normal discovery process).

## II. DAUBERT MOTIONS

### A. Standard of Review

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The district court has a gate-keeping obligation to make certain that all testimony admitted under Rule 702 satisfies these prerequisites and that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the expert is qualified,

-14-

that his or her methodology is scientifically valid, and that "the reasoning or methodology in question is applied properly to the facts in issue." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006).  Expert testimony is inadmissible if it is "speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Id.* at 757.  Further, the Court must confirm that the subject matter of an expert's testimony matches his or her area of expertise. *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3 1096, 1100 (8th Cir. 2006).

"[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire v. Carmichael*, 526 U.S. 137, 152 (1999).  However, the Eighth Circuit has held that "[c]ourts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo*, 457 F.3d at 758.  "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988).  "Only if [an] expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929–30 (8th Cir. 2001) (quoting *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995)).

### B.     Expert Reports

The parties submitted expert reports evaluating the accounting of both Cambria and Disney.  Large portions of those reports have been rendered irrelevant because the Court has found as a matter of law that Disney is not liable for any freight costs not

included on specific purchase orders. Any opinion on outstanding freight costs will be excluded accordingly.

Because Disney is liable for some A-frame costs, at an amount to be determined, and potentially slab costs, any opinion these experts have on outstanding A-frame or slab costs remain relevant. The Court is not convinced that the presentation of this information requires experts, but nonetheless the Court does not doubt Porter's or Shindelar's qualifications or methodology, and the information may be helpful to the trier of fact, so those opinions will not be excluded.

## CONCLUSION

Cambria and Disney clearly intended to negotiate a different pricing structure than described in the Agreement, but that negotiation never materialized in an actionable final agreement. Instead, the individual purchase orders became the complete agreements, and the final prices contained therein govern. Accordingly, Disney is not liable as a matter of law for additional freight costs. Disney is, however, liable for A-frame costs governed by the open purchase orders for A-frames. Cambria may also be liable for unpaid rebates, but there remain factual disputes as to the total spend, which is necessary to determine the applicability of the rebate program. Accordingly, the Court will grant summary judgment for Disney on Disney's liability for freight costs, grant summary judgment for Cambria on Disney's liability for A-frame costs, and grant summary judgment for Cambria on Disney's counterclaims, except for the unpaid rebates and product not received claims included in the breach of contract counterclaim.

The parties also presented experts that may provide helpful information to the trier of fact, but because Disney is not liable for additional freight costs, any opinion related to freight costs will be excluded.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Cambria's Motion to Exclude Expert Testimony [Docket No. 103] is **GRANTED in part** and **DENIED in part** as follows:

    a. Opinions about freight costs are excluded; and

    b. Opinions about A-frame and slab costs are not excluded.

2. Disney's Motion to Exclude Expert Testimony [Docket No. 112] is **GRANTED in part** and **DENIED in part** as follows:

    a. Opinions about freight costs are excluded; and

    b. Opinions about A-frame and slab costs are not excluded.

3. Disney's Motion for Summary Judgment [Docket No. 122] is **GRANTED in part** and **DENIED in part** as follows:

    a. Disney is granted summary judgment on Cambria's breach of contract claim for liability of freight costs;

    b. Disney is denied summary judgment on Cambria's breach of contract claim for liability of A-frame costs; and

    c. Disney is granted summary judgment on Cambria's unjust enrichment claim.

4. Cambria's Motion for Partial Summary Judgment [Docket No. 129] is **GRANTED in part** and **DENIED in part** as follows:

    a. Cambria is denied summary judgment on its breach of contract claim for liability of freight costs;

    b. Cambria is granted summary judgment on its breach of contract claim for liability of A-frame costs;

    c. Cambria is granted summary judgment on Disney's claims for breach of contract on quality issues, A-frame credits, deposit refunds, and September 2017 rebate amount and on Disney's demand for an accounting; and

    d. Cambria is denied summary judgment on Disney's counterclaim for breach of contract on products not received and rebate accounting.

DATED: March 12, 2025  
at Minneapolis, Minnesota.

                                                         JOHN R. TUNHEIM  
                                              United States District Judge